Thank you, Your Honor. May it please the Court, Taki Flavaris of Pacifica Law Group, on behalf of Petitioner Adela Ortiz-Ortiz, I'm hoping to reserve three minutes for rebuttal. Your Honors, this case is about a woman who suffered extreme domestic violence and who then fled to this country seeking refuge, but whose claims were denied without the primary basis of those claims being considered. Under this Court's precedent, for that reason, a remand is required. In the briefs, we identified three separate reasons why a remand is required here. I'm going to focus on two of them here. The first is the failure to mention or otherwise consider the documentary evidence of physical abuse in the record, and the second is the failure to elicit, much less develop, testimony on that abuse from the petitioner. So starting with the documentary evidence, this Court has established standards under the regulations and statutes that govern these types of proceedings for the consideration of evidence in the record. For both cat claims and withholding of removal, the BIA, which is the body under review here, has to consider all of the evidence in the record, whether it's the totality of the circumstances or, as Judge Gould, you wrote in the Shrestha opinion, all relevant record evidence. So in either case, everything's got to be looked at. Further, this Court has specified that requires at least a mention of any highly probative or potentially dispositive evidence. And a good example of that is the Cole case. That involved a petitioner seeking cat relief who submitted two expert reports. And the BIA rejected the claim and mentioned only one of the reports in the decision, in the BIA opinion, and this Court held that that reflected a failure to consider all evidence and a remand was required for that reason. Here we've got one report, essentially, from a doctor who looked at Ms. Ortiz's scars and other signs of the abuse that she suffered and opined in that report that her body shows signs that are consistent with what she was relaying in terms of getting hit in the face with an iron and losing her teeth, being cut with scissors, being stabbed, et cetera. And that... Wasn't her child also hurt in one of these incidents? Yes, Your Honor. Yes, that was another element of the story here where, as the abuse started to increase, the child was at risk, both because the child physically came in the space of the abuse and was physically harmed, and in one incident, I believe, had to go to the hospital. But also, the mother being harmed also harms the child, and in fact, as Ms. Ortiz has explained, the reason she is here now waiting for multiple years in detention is because she's so afraid to go back and be killed that her son would then no longer have a mother, and so that is at the heart of this issue. Is the remand you seek, do you seek a remand on the existing record or on an open record? We would seek a remand with the ability for her to testify as to the domestic violence at issue, so an open record. You want a new hearing? Yes, Your Honor. Yes. A hearing in which the government would be free to offer additional evidence. You understand that? Well, I guess we haven't addressed that. The government hasn't raised that issue. I think that the remand would at least be to the testimony that's lacking, but once we get there, I think those issues could be addressed by the IJ. You're certainly not looking for a one-sided open record? Well, I think that at least it would be the domestic violence testimony that was lacking to the extent... Normally, when we remand on an open record, then either party can present new evidence. And I guess what I'm saying is we haven't briefed that issue. I can't speak to it. I'm happy to do supplemental briefing on that point if you'd like. It sounds like you just wanted a new hearing. Yeah. You get a new hearing, it's all over. It's a redo. Yeah, absolutely. Where she would have the opportunity, where these errors could be corrected essentially. Right, and the government can come back and add new evidence. It's just a whole new hearing. Sure. If we grant the relief you seek and grant the petition and remand on an open hearing, is she going to have counsel in the agency? That's not been determined yet. I would hope that she would. I have not precluded myself from serving in that role, but we sort of haven't gotten to that point yet. Can I add one other point, which is I do think that the court can remand to the BIA and give the BIA the option of changing the decision based on the current record. And if it didn't want to do that, then it would remand it for a new hearing to the IJ. I think that is an available option. If the BIA found the physical evidence, the doctor report, and the photos sufficient to demonstrate the harm that Ms. Ortiz is alleging. You said just a moment ago that Ms. Ortiz is still in custody. Is that right? Yes. Does she have a bond hearing or anything like that? No. She has not had one. It has been some time. She had one. Did she have one? She did have one. And it was denied? Correct. Or she couldn't make bond or what? I believe it was denied. I have not seen that decision. How long has she been in custody? Four years now. I think that demonstrates she's serious about pursuing these claims. She does not want to go back, and I think the record shows why, and those elements of the record just simply were not considered. I think you look at Cole, you look at Jacinto, in terms of the failure to develop the testimony, Ashodi as well. All those cases seem to be directly on point here and resolve the issue. Unless the Court has further questions at this time, I'd like to reserve the remainder of time. No questions here. Okay. Mr. Leist, you will? I said no questions here.  Thank you, Your Honor. We'll turn to the government's argument. Mr. Leist? Good morning. You may get the award for having come the farthest for the argument. I did. I flew all the way from D.C. just for this. Thank you. May it please the Court, my name is Jeffrey Leist, appearing on behalf of the Attorney General. Substantial evidence supports the agency's determination that the petitioner failed to present a credible claim for withholding of removal and failed to demonstrate eligibility for protection under the Torture Convention. Moreover, the petitioner's numerous due process claims she raises have all not been exhausted and are otherwise without merit. In this case, the petitioner was given an interview by an asylum officer, during which she testified to the harm that she had suffered from her ex-boyfriend, as well as two specific incidents, which later became the basis of the adverse credibility findings. She testified at the asylum officer's interview that while she was returning home from shopping one day, she came across a young girl who had been hanged and electrocuted by someone who she called Mr. Quevedo. She also stated that on March 19, 2013, Mr. Quevedo and another man, both on motorcycles, shot at her while she was at a town fair. Her case was referred to an immigration judge, and she testified inconsistently regarding those two incidents. She testified that while she was coming home from work one day, she saw a girl who had been tied up and shot. She also testified regarding the March 19th incident. Why is that inconsistent with her saying that she had been hung? I think that the... I mean, it's just her observation of what she observed. I think that the hanged versus tied up... Why is that so inconsistent? I think that the electrocuted and shot part are more inconsistent than just whether or not tied and hung up could be construed as the same thing. But whether someone's been electrocuted or someone's been shot, those are different issues. Regarding the March 19, 2013 incident, she testified that on that date, her ex-boyfriend tried to beat her up while she was at church. She was asked why that differed from her statement before the asylum officer regarding Mr. Quevedo and another man shooting at her, and she testified that, oh, well, that was because her ex-boyfriend paid Mr. Quevedo to shoot her. The agency considered the petitioner's explanations that she gave at the time and found them to be confusing. Regarding the issue of the girl that she allegedly found to be murdered, she quibbled with whether she had testified that the person hadn't hung or hanged, and she had said it twice. Why are these two issues so material here? What she saw was very significant. Well, especially... Whether she gets beat up or threatened? Well, because it calls into question... It's consistent with her story. But the March 19th incident... You're supposed to look at the entire record, as we said in Thresher. Correct, Your Honor, but the March 19, 2013 incident in particular, it's completely different. She testifies at the asylum officer that it was a man shooting at her on a motorcycle with another man outside a town fair. She testified that it was actually her ex-boyfriend who beat her up. Those are drastically different tales, and then... That wasn't the explanation the petitioner gave. But did the IJ ask her that? I don't believe that he specifically asked her that, no, Your Honor. But her explanation was that it was her ex-boyfriend who paid the man to shoot her, so it wasn't even responsive to that issue. Turning to the petitioner's cat claim or torture claim, that was also supported by substantial evidence. The immigration judge looked at much of the evidence, which the petitioner points to in her briefs, and found that it was not sufficient to show that the government of Guatemala would acquiesce to any harm that she may suffer. Did the IJ look at the total record, country reports? He doesn't cite every single piece of evidence that was submitted, but he does look to the entire record. He does mention the medical report. He does mention other things. He does mention the country reports. He does mention the different affidavits the petitioner submitted. So the immigration judge does look at the entire record here, and he found that the evidence submitted just did not show that the government of Guatemala would acquiesce to the harm that the petitioner would suffer. Finally, regarding the petitioner's numerous due process claims, those have simply not been exhausted before the board. Some of them are specific challenges to the, regarding the credibility issue, whether or not the immigration judge should have asked certain questions, whether or not there were translation issues. Those simply were not raised below. Similarly, to the extent she argues that the immigration judge didn't provide her with adequate explanation of the procedures and what was expected, things like that, that also has not been raised below. Let me ask you, if we disagree with you on the credibility issue, what's the result? I believe if the court finds the petitioner to be credible, it would be remanded back to the immigration judge because the, while the immigration judge had a very large decision also deciding issues like the unaccounted, the nexus, things like that, the board didn't adopt those. So we'll definitely go back to the board for addressing those. That said, the credibility finding did also factor into the torture claim analysis. So I think that that would also have to get sent back to see if that would change the immigration judge's analysis. Well, she's only available for relief under, under the convention. The cat, the only relief she can get is cat claim relief or remove, deferral of removal. Well, she can get withholding removal and then withholding under the torture convention. She can't get asylum because these are withholding only proceedings, but withholding is separate from the torture relief. So withholding is kind of a lesser form of asylum and then there's also the torture form of relief. But, but she would, I mean, if she was found to be credible, that would go back to the board to address. By the way, on the credibility issue, do you, look to me like the board made its own credibility determination. Well, look to the immigration. It said we disagree. Basically they said we disagree with much of what the IJ did. But then it does specify the two incidents which I discussed. So I mean, it doesn't specify, you know, what other aspects it disagreed with, but it does list the two that it then bases the credibility finding on. But those were credibility determinations of the immigration judge that the board found to be sufficient. By the way, how long do, you know, people, when people are in custody like this, like Ms. Petitioner here, how often do they get bond hearings? As like, as in like a continual renewal basis? They just remain in custody until their case is resolved? That I don't know, Your Honor. I'm not sure. Can they file a petition for a bond review or something? They can, if they are, if they're in immigration proceedings, they can file for a bond hearing with the board. I don't believe that was done in this case. I didn't see anything in the record as far as that. But once the case gets to this level, I'm not sure what the procedures are, if they have to go to DHS, if that's a habeas petition or what it is. But I'm not sure, Your Honor. Counsel, I have another question that relates to some matters you covered in part, I think. Did the IJ have medical evidence before the court as to the injuries of the Petitioner at the time her teeth were allegedly knocked out and as to the injury to her child that she says was caused by the abuse of her husband? There were photographs submitted regarding the Petitioner's injuries. I don't believe there was any evidence regarding the son. The son, I believe, is still in Guatemala. And there was a medical report that was not contemporaneous with the injury suffered but was later submitted by Dr. Melanie Lane, I believe it was, that did include an analysis of what the Petitioner's injuries looked like, yes. Okay, thank you. So how long can someone stay in this type of detention under U.S. law? Could it be life imprisonment? I mean, I think that once the case itself is over, so if it goes back before the immigration judge and the board, I believe she would get another opportunity for a bond hearing at that point. If the court were to deny the Petition for review, then she would be removed at that point in time. Okay. But it would not be, I don't believe it would be. So she hasn't been removed to the state just because the proceedings are ongoing? No, I mean, she... It's not like we have some cases where people would be removed to a country that won't accept them. Well, the Petitioner has a stay in this case, so she won't be removed to Guatemala as long as this is pending before the court. But as far as her being released on bond, that's not something I really have any knowledge about. Okay. But after, if the whole proceeding ends at that point, she could be removed if there's no relief? If it removes, if the end of the proceedings is adverse to her, then yes, she would be able to be removed. Okay. Thank you. If there are no further questions, thank you. No other questions. Let me just again thank counsel for the government for coming so far for our hearing. Also, thank you. You must have brought the good weather with you. I don't know if you have time when you have these cases, but there's a very spectacular view of Mount Rainier today. Counsel, Mr. Fulvarez, you have your rebuttal time. Yes. Thank you, Your Honor. Just a few issues to address. The first, just for the bond issue, I want to clarify, Ms. Ortiz was granted bond at $15,000. She could not pay it. She couldn't pay it. Furthermore, this court does have precedent indicating that there should be a review every six months of the bond condition. We have not had the resources to pursue that. I have contacted the officials regarding this issue and they indicate . . . the prison officials there, or detention center officials, excuse me. They've indicated that they only look at facial errors. In other words, did it say she was supposed to be here for X time and we've gone beyond that? That's all they look at. They don't go beyond that. We just haven't had the resources to pursue that. I think there's an opinion of Judge Wardlaw that I joined that said they should get a bond. They want it that's pending at the U.S. Supreme Court, I think. Yes. Obviously, $15,000 is a lot of money. Right. Absolutely. Unless there's any questions on the bond, I just wanted to touch on a few other points. In terms of the credibility piece, the BIA focused on two discrete events. The BIA did not address the domestic violence, the documented evidence, the lack of the testimony. Those cannot undercut the fact that we have a concern here that she did suffer physical abuse and the BIA could theoretically discredit her on those events but still find her credible as to the fundamental portion of her claim. Moreover, that error tainted the BIA's ability to review those events because they didn't look at those events and her testimony about them from the perspective of someone who has been severely abused on a regular basis. As this court recognized in Shrestha versus Gonzalez, someone who has suffered that kind of abuse, you will expect them to have inconsistencies, to confuse events, to mix and match facts about those events. I think that's what we're seeing here. The other piece to consider- Quite a bit of difference, isn't there, quite frankly, between saying a stranger did this to me and then later saying the stranger was hired by my- or the person that hurt me was my ex-boyfriend or was hired by my ex-boyfriend? I think that this phenomenon that I'm talking about can be combined with other factors such as translational issues and her serious fear of Mr. Devis. All these events she's talking about, at some point in the record, it's revealed he was involved. So I think that's another factor is she's talking about things and not wanting to mention him and then he sort of comes out from time to time. And again, that's a totality of the circumstances analysis that just has not been done here. As to acquiescence, I think that is an issue for the BIA. As the government mentioned, the BIA didn't adopt certain aspects of the IJA's opinion. That's included there. So I don't think that is live here. Furthermore, Ms. Ortiz mentioned on numerous occasions that she has gone to the police and they have done nothing. They have refused and blamed her. So that shows the acquiescence that is necessary. There's more than enough here, especially in comparison to the BIA's own ARCG opinion. And then the last, as to exhaustion, we've laid out the fact the BIA addressed the claims on its own. So that moves the exhaustion point. Furthermore, Ms. Ortiz wasn't actually instructed on the things that she would be appealing as she was required to be instructed. And she did raise her fear, that she had this serious fear, which triggered the BIA's review, unless there are questions about exhaustion. Thank you, Your Honors. I would just close by saying that Ms. Ortiz is waiting in detention for the BIA to take a look at the entire case. She fears going back. And under this Court's precedence, that remand is required. Thank you very much. Thank you, Counsel. I'll just briefly say I want to thank both counsel for their excellent arguments. In addition, we thank Petitioner's counsel for his pro bono service from him and his firm. And we thank Respondent's counsel for traveling so far to help us and bringing the good weather. With that, the Ortiz-Ortiz case, number 1473863, shall be deemed submitted. And we'll turn to the next case on our docket, which is Foster v. County of Spokane.
judges: Hawkins, Gould, Paez